JUAN A. MONAGAS, Plaintiff and Appellant, v. CENTRAL EUREKA, INC., Defendant and Appellee.

No. 4778. Argued December 5, 1930.—Decided February 5, 1931.

*José Sabater* for appellant. *Oscar Souffront* for appellee.

MR. JUSTICE WOLF delivered the opinion of the Court.

This was a suit for breach of contract. The complaint contained two counts. Under the first, the plaintiff alleged the execution in New York, of a contract for the grinding of cane, etc. (*refacción agrícola*) and for a sale of cane produced by the "Hacienda Belvedere" whereby the defendant, Central Eureka, Inc., agreed to advance to the plaintiff the sum of $12,400 at the various periods expressed in the complaint.

The plaintiff, Juan A. Monagas, so said the complaint, also sold to the defendant all the cane that should be produced in the crops of 1925, 1926 and 1927, for the same price and under the same conditions agreed upon between the Central and the firm of "Monagas y Vidal" for the crop of 1924.

The parties likewise agreed that the said contract should be reduced to form and should include all the particulars of the contract of "Monagas y Vidal" in accordance with the law of agricultural contracts. This agreement for a more formal contract between the parties was never carried into effect. After specifying some of the conditions contained in the contract with "Monagas y Vidal" the plaintiff alleged that the said agricultural contract had been infringed by the defendant because the latter refused to receive cane produced in the harvest of 1925; because the defendant "for the purpose of relieving itself of the congestion in the receipt and delivery of all the cane (of the plaintiff understood) through the instrumentality of its President, Don Mateo Fajardo, insisted (*impuso*) to the plaintiff that it was necessary to sell a part of the cane of 'Hacienda Belvedere' to another Central and that the said Mr. Fajardo in representation of the defendant made arrangements with the South Porto Rico

Sugar Company whereby the plaintiff should deliver to this last-named sugar corporation with the intervention of the defendant, 3,000 tons of the total quantity of cane sold by the plaintiff to the defendant and cultivated and ready for delivery in the 'Hacienda Belvedere.' "

The South Porto Rico Sugar Company, so it was alleged, did not accept the delivery of 3,000 tons, but required that 6,000 should be sold to it; in other words, 3,000 for the harvest of 1925 and another 3,000 tons for the harvest of 1926, and that in effect the plaintiff authorized by the defendant sold to the South Porto Rico Sugar Company said 6,000 tons of cane delivered in the switches of "Borinquen" and "Franqui" of Cabo Rojo; that the defendant, through its President, Don Mateo Fajardo, ordered the plaintiff to continue to deliver cane to the South Porto Rico Sugar Company until the latter should refuse to receive more, and that the plaintiff (for the harvest of 1924–1925) in fact delivered 7,020 tons of cane; that the defendant continued to advance money to the plaintiff; that the plaintiff also continued to deliver cane to the defendant.

The breach of the contract consists in the fact as alleged, that a certain amount of cane belonging to the plaintiff was never delivered or ground by the defendant because the latter never furnished enough means (*material*) to enable the plaintiff to make the necessary deliveries and this, despite all the requests that the plaintiff made that the defendant should carry to its factory all the cane produced and which would have been delivered if the defendant had furnished all the necessary means (*material*).

There are other averments in the complaint that through the mediation of don Mateo Fajardo, the plaintiff was led to believe, or something similar thereto, that cane produced late in the season could or would be ground by the Central Rufina, but the Central Rufina refused to receive the said cane. By reason of the alleged failure of the defendant to

receive or take possession of the cane of the plaintiff, the plaintiff alleged in detailed items the loss of $15,011.98.

It sufficiently appears from the complaint that the parties agreed that the plaintiff was to deliver any and all of his cane in the switch belonging to the defendant, known as the "Switch of Cabo Rojo".

The second cause of action sought the correction of certain items in the accounts or liquidations rendered by the defendant to the plaintiff and contended that the amount of such accounts should be reduced in the sum of $1,073.94.

In brief, the theory of the complaint is that the defendant was under the necessity of grinding all the cane produced by the "Hacienda Belvedere" and that the plaintiff could not deliver all his cane because the defendant did not furnish the necessary transportation and, hence, that the plaintiff suffered damages. The defendant demurred and when the demurrer was overruled, answered and filed a counter-complaint. The District Court of Mayagüez rendered a judgment against the plaintiff and in favor of the defendant on the cross-complaint with some slight changes. The court in its opinion characterized the contract as an agricultural contract and recited the duty of Monagas to deliver the cane to the Central in accordance with the specification of the contract "the said cane thereby being affected by a lien (*gravados*) for the total of the amounts that the plaintiff was receiving from the defendant." The court then found that by virtue of the petition of Monagas himself in December, of 1924, the Central Eureka, Inc., relieved him from his obligation to deliver the cane of the harvest belonging to the years 1925 and 1926, by virtue of the following letter dated on the 27th of December, 1924 and sent by the Central Eureka, Inc., to Mr. Monagas:

"Mr. Juan A. Monagas, Mayagüez.—My dear Sir and Friend: Taking into account the reasons expressed by you, there is no objection in relieving you, as we do relieve you by virtue of the present writing, of the obligation to deliver to us 3,000 or more

tons of cane of that which the 'Hacienda Belvedere' may produce during the crops of 1925 and 1926, allowing you therefore to contract for the grinding of this cane with any other Central whatsoever.

"As usual at your service,

"Central Eureka, Inc.,

"M. Fajardo, President."

The court then found that Monagas made use of this letter to obtain a contract with the South Porto Rico Sugar Company with respect to the same cane which had been contracted to be ground in the Central Eureka, having delivered to the South Porto Rico Sugar Company for the crop of 1925 more than 7,000 tons of cane, and for the crop of 1926 more than 6,500 tons of cane, or in other words, nearly the total of the cane produced in the "Hacienda Belvedere". The court also found that it was more convenient for Monagas to send his cane to the South Porto Rico Sugar Company than to the Central Eureka, for the following reasons among others: Because the switches "Franqui" and "Borinquen" where the cane for the South Porto Rico Sugar Company could be weighed were nearer to the "Hacienda Belvedere" and more accessible than the railroad switch of Cabo Rojo where the cane destined to the Central Eureka had to be delivered, and because the extract of the cane produced (*sucrosa*) gave a better liquidated sum to Monagas than would have resulted if he had delivered the cane to the Central Eureka rather than to the South Porto Rico Sugar Company. The court also found, and from our point of view this is very important, that at the beginning of the grinding season of 1925 the defendant had a weigher of cane at the switch of Cabo Rojo to receive any cane which Mr. Monagas had to offer and that the said weigher never refused to receive cane from the plaintiff, nor did the latter ever notify the said weigher or the Central Eureka of a necessity of delivering more than the small amounts delivered by him. Nor according to the court, did the plaintiff notify the de-

fendant nor put in the switch of Cabo Rojo at the disposition of the defendant, any other cane than that which he voluntarily delivered during the crop of 1925 amounting to a little more than 700 tons. The court then found that from the 27th of December, 1924, on which date the Central wrote a letter to Monagas at his request, the letter previously transcribed, and by reason of the subsequent acts of the parties and their conduct in relation to the object of the contract, both parties considered the contract as rescinded, especially Mr. Monagas whose conduct by no manner of means could be reconciled with his alleged insistence in the performance of the said contract.

The court held that the Central Eureka was always ready to accept any cane from the plaintiff and that if the plaintiff failed to deliver it was either through his own negligence or lack of desire to do so, and especially insisted that if Monagas had pushed the delivery of his cane during the early months of the grinding season, he would have had no difficulty; that both the Central Eureka, Inc., as well as the South Porto Rico Sugar Company were in condition to accept and would have accepted any cane that would have been delivered to either of them by Monagas. The court also found that Mr. Monagas never presented any objections to liquidations that were presented to him by the Central Eureka until the 22nd of February, 1927, when for the first time Monagas wrote to the company challenging certain items. The court also found that it was not the Central Eureka which required Monagas to make the contract with the South Porto Rico Sugar Company, because the documental proof does not support this contention and because furthermore it was shown that the Central Eureka never obtained any benefit from the contract by reason of the delivery of the cane to the South Porto Rico Sugar Company and that it was Mr. Monagas who did obtain such a benefit.

On appeal, in the early part of his brief the appellant attacks the conclusion which we have quoted, to the effect

that the cane of the plaintiff was affected by a lien in favor of the defendant. The appellant maintains that the cane was totally sold by Monagas to the Central Eureka and hence, that there could be no such thing as a lien on the property belonging to a person himself. In other words, the theory is that the sale in 1924 was an executed, complete contract and that the title of the cane passed from Monagas to the Central Eureka. Perhaps not expressed exactly in these words, it may be said that the idea of the plaintiff is that anything that the Central did thereafter was to relieve itself and any act of Monagas' was as an agent of the defendant.

In this case the theory that the title to the cane passed at the moment of the execution of the contract can not be sustained. Section 1348 of the Civil Code provides:

"By a contract of purchase and sale one of the contracting parties binds himself to deliver a specified thing and the other to pay a certain price therefor in money or in something representing the same."

In other words, a delivery is ordinarily essential.

The appellant puts some reliance on section 1353 of the Civil Code, as follows:

"The sale shall be perfected between vendor and vendee and shall be binding on both of them, if they have agreed upon the thing which is the object of the contract and upon the price, even when neither has been delivered."

A reading of this section shows that what the Legislature had in mind was that a contract with mutual obligations arises even if there should be no actual delivery, but in no sense does it relieve a vendor of the duty fixed by law to deliver the objects which have been expressed in the contract. In the instant case the title to the growing crop did not pass until actual delivery, although under section 1353 the vendor was bound to deliver and the purchaser bound to accept any goods duly tendered. **Originally it is evident**

that the Central Eureka wanted to obtain all the cane that Monagas produced and that Monagas wanted to deliver the same to the Eureka. In point of fact this contract was probably rather a promise to sell and buy, governed by the first paragraph of section 1354 of the Civil Code, as follows:

"A promise to sell or buy, there being an agreement as to the thing and price, gives a right to the contracting parties to mutually demand the fulfillment of the contract."

As the jurisprudence shows, the intention of the parties governed and we do not discover the slightest intention in the record on the part of the parties that the title to the growing crops should immediately pass to the Central Eureka. It stands to reason that ordinarily no Central would normally make such a contract.

The foregoing are general considerations, but the contract in this case required delivery to the Central at a certain definite place and the evidence did not show that such a delivery was made. There was no delivery and the only evidence of an offer of delivery or of a tender of the goods was a supposed letter of Monagas' written to the Central Eureka, the reception of which was denied. We fail to find in the evidence any such delivery or tender of delivery which would have completed the contract. We feel bound to hold that the title to the growing crops did not pass in December of 1924, when the contract was made. This failure to deliver or make a due tender of the goods is by itself decisive of this case. As the record shows, we think from the testimony of Fajardo, Monagas could have carried cane to the switch and left it there; that the cars or trains of the defendant were expedited more or less as the demands for transportation arose. Also, however it was named, the idea of the parties was, as the record shows, to make an agricultural contract to be construed as such contracts generally are.

What we have said before may be considered to be implicit or even directly expressed in the opinion of the court

below. We have no hesitation, however, in supporting the other general findings and conclusions of the said court.

The battle in the court waged largely over whether the contract made in December, 1924, had not been rescinded. There was a great deal of discussion in the briefs as to whether it was Fajardo or Monagas who initiated or carried through the negotiations with the South Porto Rico Sugar Company. We think the court that heard all the evidence was justified in believing that it was Monagas in legal effect who asked to be relieved of the contract. It would then make no difference that the suggestion originally came from Fajardo.

On the other hand, even if Fajardo engineered everything for the consummation of the contract with the South Porto Rico Sugar Company and did it solely and exclusively to relieve himself, yet Monagas accepted as a principal, all the acts of Fajardo. The analysis by the court sufficiently shows this, and other things in the record make it clear. We shall not attempt to transcribe the evidence but we think the conduct and conversation of the parties when they agreed that the crop for 1926–1927 should not be ground by the Central Eureka, showed that the parties considered that the Central was totally relieved of grinding for the previous years. It has been sufficiently stressed by the court below that the acts of Monagas in delivering cane to the South Porto Rico Sugar Company as he pleased, the signing of a contract with the South Porto Rico Sugar Company, and his failure to except to the accounts, were all indications that the parties were relieved for two years at least from being bound by the contract of December, 1924.

The contract was not totally rescinded inasmuch as the Central Eureka was bound to make advances, but the parties were relieved from delivering or accepting cane.

Incidentally we may say that even though Monagas was right in maintaining that the distance of half a kilometer would not have made a great difference in the transportation of cane and that he could easily have brought wagons to

the switch of Cabo Rojo, yet the other testimony tends clearly to show that the number of trips that the carts of Monagas could have made would have been reduced. The other findings of the court would in any event remain.

We have examined the evidence and briefs of the parties and we are entirely satisfied that Monagas himself thought that he was free to deliver his cane as it pleased him.

Finally in this connection we may say that we question very seriously whether the first count stated a cause of action. We do not think that to say that the defendant failed to transport the goods of the plaintiff despite the frequent requirements made for that purpose, was a substitute or equivalent of what we consider a necessary averment, namely, that the plaintiff made a due tender of delivery perhaps describing the acts that constituted such tender.

We are entirely satisfied that the second cause of action was subject to demurrer. To ask that the account between the parties be reduced when the Central was not suing on such an account, was entirely an academic question.

These considerations dispose of the first three assignments of error. The fourth assignment simply says: "The court erred in declaring good the cross-complaint." This was an insufficient assignment. The matter involved to a large extent was a conflict in the evidence and the appellant does not convince us that there was any fundamental error.

The court was justified in imposing costs on the appellant.

Without an assignment of error the appellant complains of the failure of the court to file findings along with the judgment, in accordance with section 227 of the Code of Civil Procedure as amended. Whether or not it was a mere omission of the judge to file the findings along with the judgment we would not question in any case that the judge may, as he did, take a reasonable time after the date of the judgment for filing, especially within the term.

The judgment will be affirmed.